IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF CHRISTIAN A. & BRYSEN A.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF CHRISTIAN A. AND BRYSEN A., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
JESSE A., APPELLANT.

Filed January 7, 2014.    No. A-13-412.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Matt Catlett for appellant.

Joe Kelly, Lancaster County Attorney, and Daniel J. Zieg for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Jesse A. appeals from two orders of the separate juvenile court of Lancaster County adjudicating his two minor children as juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). Based on the reasons that follow, we affirm.

## BACKGROUND

Jesse and Savannah A. were married on January 15, 2010, and are the parents of Christian A., born in May 2011, and Brysen A., born in February 2013. On February 20, 2013, the State filed a petition alleging that Christian was a juvenile as defined by § 43-247(3)(a) on two counts: (1) that he lacked proper parental care by reason of the faults or habits of his mother, Savannah, or was in a situation dangerous to his life or limb or injurious to his health or morals, in view of the fact Savannah engaged in a physical altercation with Jesse on January 16 in

- 1 -

Christian's presence, and that the actions of Savannah, and/or the situation of Savannah's being exposed to Jesse, places Christian at risk of harm, and (2) that Christian lacked proper parental care by reason of the faults or habits of his father, Jesse, or was in a situation dangerous to his life or limb or injurious to his health or morals, in view of the fact Jesse engaged in a physical altercation with Savannah on January 16 in Christian's presence, and that the actions of Jesse, and/or the situation of Jesse's being exposed to Savannah, places Christian at risk of harm.

A hearing on the State's petition was held on April 8, 2013. The juvenile court granted the State leave to file an amended petition, which added Brysen as a juvenile as defined by § 43-247(3)(a) on the same counts as alleged in the original petition. Jesse entered a denial to the allegations in count two of the amended petition. Savannah entered a plea of no contest to the allegations in count one. A factual basis was presented to support the plea, and the court accepted Savannah's no contest plea.

After accepting Savannah's plea, the State asked that the Department of Health and Human Services (the Department) be given legal custody of Christian and Brysen, with physical custody remaining with Savannah. The court asked the State if it had any additional evidence in support of its request. The State then called Sarah Birney, an employee of the Department who was familiar with the case. Birney testified that the Department was concerned that Jesse might have some "drug issues." She testified that as a result of the drug use concerns, the Department had instituted a safety plan limiting Jesse's visits with the children to visits at Savannah's home supervised by Savannah's mother. Birney testified that the caseworker had given Jesse an opportunity to do a walk-through of his home to see if it was appropriate for visitations and that he had refused. Birney also testified that Savannah had reported to the Department that Jesse had been harassing her about allowing visitation. Birney testified that due to the allegations of domestic violence, the Department felt that supervised visitation was necessary to observe how Jesse behaved around the children and to ensure the situation was safe for them pending further assessments of Jesse.

Birney also testified that the Department normally asks for legal custody of minor children at disposition so that it has access to the children and for the children's safety and protection. She testified that the Department was in favor of it being given legal custody of Christian and Brysen for their safety and protection based on the allegations of domestic violence and drug use.

Following the April 8, 2013, hearing, the juvenile court entered an order finding that the allegations against Savannah in count one were true by a preponderance of the evidence and adjudicating Christian and Brysen. It also ordered that temporary legal custody of the children be placed with the Department, with Savannah having physical custody. The court set a formal hearing in regard to the allegations in count two against Jesse. The court also ordered Jesse to cooperate with a walk-through of his residence, if he wanted to have visits take place there, and to cooperate with random drop-ins by the Department when he had the children.

On April 12, 2013, the State filed a second amended petition which included the same allegations against Jesse as in the amended petition, with one additional allegation--that Jesse had used marijuana on one or more occasions in the presence of one or both of the children.

A hearing on the second amended petition was held on April 23, 2013. Savannah testified that she and Jesse engaged in a physical altercation on January 16, 2013. She testified that she

and Jesse had separated a few weeks before the incident and were still separated at the time of the hearing. Savannah testified that on the date in question, she and Christian had gone with Jesse to the store and on the way home Savannah found a woman's wallet and identification in the glove compartment of Jesse's truck. When they arrived back at Savannah's residence, she confronted him about it while they were still in the truck. Jesse told Savannah that the items belonged to his girlfriend. Savannah testified that she was upset and that she responded by slapping Jesse on the shoulder with an open hand. Savannah testified that she got out of the truck and was getting Christian's car seat from the back seat, when Jesse called her a "dumb bitch," called her a "piece of [crap]," and said that he regretted marrying her. She also testified that Jesse punched her in the left jaw when she either was getting the car seat or was reaching for Christian, who was sitting on Jesse's lap.

Savannah testified that Christian was upset and started crying during the argument. She testified that this was not the first physical altercation Christian had witnessed between her and Jesse. She testified that Christian, who was 20 months old at the time, had witnessed more than 20 physical altercations between them.

At the time of the incident at issue, Savannah was about 30 or 31 weeks pregnant with Brysen. Savannah testified that Jesse knew she was pregnant and that some of their other physical altercations had occurred while she was pregnant with Brysen.

Savannah also testified that she and Jesse smoked marijuana together and that Jesse would try to get her to smoke it with him almost every day. She testified that they would smoke marijuana in their one-bedroom apartment, sometimes in the bathroom and other times in the apartment in front of Christian. She testified that she has smoked marijuana at least five times in front of Christian and that Jesse smoked marijuana "a lot" and often in Christian's presence.

Jesse also gave his account of the altercation on January 16, 2013. He testified that after returning from the store, Savannah confronted him about his girlfriend's identification card that she found in the glove compartment of his truck. He testified that Savannah was angry and was yelling at him. Jesse testified that Savannah reached across the front seat and hit him on the right side of his face with a closed fist. He testified that Christian was sitting on his lap at the time. Jesse testified that Savannah got out of the truck and that while reaching in the back seat for Christian's car seat, she found hair gel and squirted it all over the inside of his truck. He testified that at no time did he raise his voice or swear at Savannah and that he just told her to get out of the truck. He also denied hitting Savannah.

Jesse testified that the January 16, 2013, incident was the first physical altercation between him and Savannah, but that they have had a lot of verbal arguments with raised voices.

Jesse admitted smoking marijuana in the past, but denied ever smoking at home and denied ever smoking it in the presence of his children.

A friend of Jesse's testified that he was sitting in the back seat of Jesse's truck during the altercation on January 16, 2013. He testified that Savannah got upset after finding Jesse's girlfriend's wallet and identification in the truck. He testified that she "punched" Jesse in the face and then squirted hair gel in the truck. Jesse's friend testified that Christian was sitting on Jesse's lap when Savannah punched Jesse. He testified that Jesse told Savannah to get out of the truck, but that Jesse did not swear at her or raise his voice. He also testified that Jesse did not hit or strike her.

Following the hearing, the juvenile court entered an order finding the allegations against Jesse in count two in the second amended petition were true by a preponderance of the evidence and found that Christian and Brysen were children as defined by § 43-247(3)(a). The court ordered Jesse to participate in a pretreatment assessment.

## ASSIGNMENTS OF ERROR

Jesse assigns, restated, that the juvenile court erred in (1) adjudicating Christian and Brysen based on the allegations in count one against Savannah, (2) giving the Department temporary legal custody of Christian and Brysen, (3) ordering Jesse to cooperate with a walk-through of his residence and cooperate with random drop-ins by the Department, and (4) adjudicating Christian and Brysen based on the allegations against Jesse in count two.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of Damien S.*, 19 Neb. App. 917, 815 N.W.2d 648 (2012).

## ANALYSIS

*Adjudication Based on Allegations*
*Against Savannah.*

Jesse first assigns that the juvenile court erred in adjudicating Christian and Brysen based on the allegations in count one against Savannah because there was insufficient evidence to support the adjudication. We disagree.

The purpose of the adjudication phase is to protect the interests of the child. The Nebraska Juvenile Code does not require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. The State must prove such allegations by a preponderance of the evidence. *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013).

Savannah pled no contest to the allegations in count one, and a factual basis to support the plea was presented to the court. The evidence consisted of an incident report by the Lincoln Police Department that resulted from the domestic dispute that occurred on January 16, 2013. The report described an altercation between Jesse and Savannah that took place in Jesse's vehicle, while Christian was present and sitting on Jesse's lap. The report contains different versions of what happened as reported by Savannah, Jesse, and Jesse's friend. However, it is clear from the incident report that Christian witnessed some sort of physical altercation between his parents, whether it was just Savannah hitting Jesse or Jesse also striking Savannah. The evidence established that there was a definite risk of future harm to Christian and thus, provided a sufficient factual basis to support Savannah's plea and the adjudication of Christian.

Jesse also argues that the altercation between Savannah and Jesse on January 16, 2013, was not grounds to adjudicate Brysen because he was not yet born at that time. Although Brysen was not physically harmed during the January 16 incident, as previously noted, the State does not have to prove that the child suffered physical harm, it must only establish that there is a definite risk of future harm. See *In re Interest of Justine J. et al., supra.* Physical violence between Savannah and Jesse, occurring only a month before Brysen was born, posed a definite risk of future harm to Brysen. We conclude that there was sufficient evidence to support the court's adjudication of Brysen. Jesse's assignment of error is without merit.

*Legal Custody.*

Jesse next assigns that the juvenile court erred in giving the Department temporary legal custody of the children. He argues that there was no advance notice of the motion by the State, that there was insufficient evidence that such an award was necessary, and that the court impermissibly permitted counsel for the Department to participate in the hearing on the State's motion.

In regard to Jesse's allegation of no advance notice, such notice was not required. Once the juvenile court adjudicated Christian and Brysen as children within the meaning of § 43-247(3)(a), the court had jurisdiction over the children and could determine their placement, including legal and physical custody. Neb. Rev. Stat. § 43-284 (Reissue 2008) provides that when any juvenile is adjudged to be under § 43-247(3), "the court may permit such juvenile to remain in his or her own home subject to supervision or may make an order committing the juvenile to . . . (6) the care and custody of the Department." The juvenile court has broad discretion as to the disposition of those who fall within its jurisdiction. *In re Interest of T.T.*, 18 Neb. App. 176, 779 N.W.2d 602 (2009).

The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests, and the code must be construed to assure the rights of all juveniles to care and protection. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). Once a child has been adjudicated under § 43-247(3), the juvenile court ultimately decides where a child should be placed. *In re Interest of Karlie D., supra.* Juvenile courts are accorded broad discretion in determining the placement of an adjudicated child and to serve that child's best interests. *Id.*

In regard to Jesse's argument that there was insufficient evidence to support giving the Department legal custody, the State provided testimony from Birney in support of its request. Birney testified that the Department was concerned that Jesse might have some "drug issues." She testified that as a result of the drug use concerns, the Department had instituted a safety plan limiting Jesse's visits with the children to supervised visits. Birney testified that the caseworker had given Jesse an opportunity to do a walk-through of his home to see if it was appropriate for visitations and that he had refused. Birney also testified that Savannah had reported to the Department that Jesse had been harassing her about allowing visitation.

Birney also testified that the Department normally asks for legal custody of minor children at disposition so that it has access to the children and for the children's safety and protection. She testified that the Department was in favor of being given legal custody of

Christian and Brysen for their safety and protection based on the allegations of domestic violence and drug use.

As previously noted, the court has broad discretion in deciding what is in the best interests of children who have been adjudicated. See *In re Interest of Karlie D., supra*. We conclude that there was sufficient evidence to support giving the Department legal custody of the children.

We also determine that there was no error in allowing counsel for the Department to participate following the State's request to give the Department legal custody. Jesse argues that counsel for the Department should not have been allowed to cross-examine Birney because it had not had involvement in the case. Based on Birney's testimony, the Department was already involved in the case at that point, as it had implemented a safety plan.

*Juvenile Court's Orders Regarding*
*Jesse's Visitation.*

Jesse next assigns that the juvenile court erred in ordering him to cooperate with a walk-through of his residence if he wanted visits to take place there and to cooperate with random drop-ins by the Department when he had the children. There was evidence presented that the Department had instituted a safety plan based on concerns that Jesse had "drug issues." The safety plan instituted supervised visits for Jesse. He previously had been given an opportunity to have the Department do a walk-through of his home to see if it was appropriate for visits, and he refused.

The court had adjudicated Christian and Brysen and had the authority to ensure the safety of the children. Juvenile courts have broad discretion to accomplish the purpose of serving the best interests of the children involved. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). Further, § 43-247(5) gives the juvenile court jurisdiction over the parent of any juvenile described in § 43-247(3)(a), as Christian and Brysen were found to be. There is no merit to this assignment of error.

*Adjudication Based on Allegations*
*Against Jesse.*

Jesse also assigns that the juvenile court erred in adjudicating Christian and Brysen based on the allegations against him in count two of the second amended petition. Jesse first argues that the juvenile court's order violates his due process rights because the second amended petition alleged that he had "engaged" in a physical altercation with Savannah, while the court's order states that Jesse was "involved" in such altercation. Although the court used a different word in its order to describe Jesse's participation in the altercation from that used in the petition, the court stated that it found that the allegations of count two of the second amended petition were true by a preponderance of the evidence. Therefore, the court clearly found the allegations in the second amended petition to be true, despite its use of a different word. The juvenile court's order does not violate Jesse's due process rights.

Jesse also argues that there was insufficient evidence to support the adjudication. He contends that there was no evidence that Christian or Brysen were actually harmed as a result of the January 16, 2013, incident or that there was a showing of a definite risk of harm. Jesse again notes that Brysen was not yet born at the time of the incident.

Although Christian and Brysen did not suffer visible harm as a result of the January 16, 2013, incident, the physical violence between Savannah and Jesse established a definite risk of future harm. Savannah, Jesse, and Jesse's friend all testified that a physical altercation occurred on January 16. Although the witnesses' accounts of the incident differ, they all agree that Christian was present and was sitting on Jesse's lap. Further, Savannah testified that the physical altercation on January 16 was not the first physical altercation between her and Jesse. She testified that Christian, at 20 months of age, had witnessed more than 20 physical altercations between them. Although Jesse testified that the January 16 incident was the first physical altercation, the court apparently found Savannah's testimony to be more credible as the court was entitled to do. Where the evidence is in conflict, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of Damien S.*, 19 Neb. App. 917, 815 N.W.2d 648 (2012). We give deference to Savannah's testimony, as the juvenile court did.

As previously discussed, even though Brysen was not born at the time of the January 16, 2013, incident, the incident posed a definite risk of future harm to Brysen, especially when the pattern of physical violence between the parties is taken into consideration.

Jesse also argues that the juvenile court erred in permitting the Department's counsel to participate in the adjudication hearing involving the allegations against Jesse. Jesse contends that the Department's participation was allowed based on the juvenile court's erroneous decision to give the Department legal custody of Christian and Brysen. Having previously determined that the juvenile court did not err in giving the Department legal custody, we find the court did not err in allowing the Department's counsel to participate in the adjudication hearing involving the allegations against Jesse.

Finally, Jesse argues that the juvenile court erred in ordering him to participate in a pretreatment assessment because such order rested on an erroneous adjudication. Because we have found that the juvenile court properly adjudicated Christian and Brysen in regard to the allegations against Jesse, this assignment of error is without merit.

CONCLUSION

Having found no merit to any of Jesse's assignments of error, we affirm the juvenile court's adjudication of Christian and Brysen as juveniles within the meaning of § 43-247(3)(a) based on the faults and habits of Savannah and Jesse.

AFFIRMED.